## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Beatriz Yolanda Garcia Henao,<br><br>*Petitioner*,<br><br>v.<br><br>Kenneth GENALO, in his official capacity as Field Office Director of New York, Immigration and Customs Enforcement; Kristi NOEM in her official capacity as Secretary of Homeland Security; Pam BONDI, in her official capacity as Attorney General; and Todd M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement.<br><br>*Respondents*. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Yesterday, Petitioner Beatriz Yolanda Garcia Henao ("Beatriz Henao" or "Henao"), a resident of Brooklyn, New York, was arrested and detained without a warrant while selling goods on the street in Elmont, in Nassau County.  Ms. Henao is presently being held at the Nassau County Jail.  She and her family have been told that she will be transferred to a DHS Facility in Texas, and that her transfer is imminent.

Ms. Henao's detention was neither individualized nor justified. Instead, her detention is part of a campaign of random, often race-based stops and detentions that result in the jailing of individuals with significant community ties without any individualized review. Respondents now purport to hold Petitioner in mandatory detention, without recourse to bond, despite Ms. Henao is a longtime residence in the United States, lacks any criminal record, and is likely eligible to reside here, with a pending hearing in immigration court on March 13, 2026.

1

Because her detention is unlawful, Ms. Henao asks this Court to grant her petition and order her immediate release.

**PARTIES**

1. Petitioner Beatriz Yolanda Garcia Henao is a resident of Brooklyn, New York. She was detained by Respondents on February 27, 2026 and remains in their custody.

2. Kenneth Genalo is named in his official capacity as the Field Office Director of the New York Field Office for Immigration and Customs Enforcement ("ICE") within the United States Department of Homeland Security. The ICE New York Field Office is responsible for detentions in the greater New York City area, including Suffolk and Nassau County. In this capacity, Mr. Genalo is also responsible for the administration of immigration laws and the execution of detention and removal determinations and is a legal custodian of Petitioner. Respondent Genalo's address is New York ICE Field Office Director, 26 Federal Plaza, 7th Floor, New York, New York 10278.

3. Respondent Kristi Noem is named in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Eastern District of New York; is legally responsible for pursuing any effort to remove the Petitioner; and as such is a legal custodian of the Petitioner. Respondent Noem's address is U.S. Department of Homeland Security, 2707 Martin Luther King Jr Ave SE, Washington, District of Columbia 20528.

4. Respondent Pam Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review ("EOIR"), pursuant to 8 U.S.C. §

1103(g). She routinely transacts business in the Eastern District of New York and is legally responsible for administering Petitioner's removal and custody proceedings and for the standards used in those proceedings. As such, she is the custodian of Petitioner. Respondent Bondi's office is located at the United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

5. Respondent TODD M. LYONS is named in his official capacity as Acting Director of ICE. He directs ICE operations and is responsible for the administration of the immigration laws.  As such, he is the custodian of Petitioner.  Respondent Lyons' office is located at 500 12th St SW, Washington, DC 20536.

## **JURISDICTION**

6. The federal district courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the lawfulness or constitutionality of their detention by ICE. *See, e.g., Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Petitioner was detained by Respondents on June 23, 2025.

7. This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241 (habeas); 28 U.S.C. § 1331 (federal question); and Article I, § 9, cl. 2 (the Suspension Clause) of the United States Constitution. This Court has authority to grant declaratory and injunctive relief. 28 U.S.C. §§ 2201, 2202. The Court has additional remedial authority under the All Writs Act, 28 U.S.C. § 1651 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## **VENUE**

8. Venue is appropriate in this district as Petitioner is currently detained here at the Nassau County Jail in Central Islip, New York.

## SPECIFIC FACTS ABOUT PETITIONER

9.      Ms. Henao is 67 years old, and has resided in New York City since 2019. She has never been charged with or convicted of any crime.  Although she has overstayed the visa by which she originally entered the country, Ms. Henao is challenging her status, and has an appearance in immigration court scheduled on March 13, 2026 to determine whether she has a right to remain in the United States.

10.     Ms. Henao has recently had eye surgery and suffers from high blood pressure. She has prescriptions for gabapentin and DULoxetine, which she took daily before her detention.  She is not presently receiving these medications at the Nassau County Jail.  In addition, Ms. Henao has recently begun exhibiting signs of dementia, and had an appointment with a psychologist scheduled at the time she was detained.

11.     On February 27, 2026, Ms. Henao was selling goods from an outdoor stand in Elmont, New York.  An unmarked car pulled up to her stand, and she was arrested and transported to the Nassau County jail.  While at the Nassau County Jail, Ms. Henao was served with a Notice to Appear in Immigration Court.  While in custody at the Nassau County Jail, Ms. Henao was told that she faces imminent transfer to a DHS Facility in Texas.

12.     On information and belief, Ms. Henao has no criminal record and has never been arrested before.

## MS. HENAO'S CONTINUED DETENTION RUNS AFOUL OF HER CONSTITUTIONAL PROTECTIONS

### A.      Immigration Detention Legal Framework

13.     Congress has authorized civil detention of noncitizens in removal proceedings for specific, non-punitive purposes. *See Jennings v. Rodriguez*, 138 S.Ct. 830, 833 (2018); *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). For individuals who are "arriving" in the U.S. or

4

who are subject to expedited removal because they have been present under two years and meet certain other requirements, mandatory detention is authorized by 8 U.S.C. § 1225(b). For individuals who are in removal proceedings following entry without inspection and who are not subject to mandatory detention based on criminal history, detention is normally authorized by 8 U.S.C. § 1226(a). Individuals with a final order of removal may be subject to mandatory or discretionary detention pursuant to 8 U.S.C. § 1231(a).

14.     Detention serves only two legitimate purposes: mitigating flight risk and preventing danger to the community. *See Zadvydas*, 533 U.S. at 690; *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020).

15.     Beginning in May 2025, the Board of Immigration Appeals and the Department of Justice have promulgated a series of decisions and policies to attempt to reclassify individuals who entered the country without inspect as subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). *See Matter of Q. Li*, 29 I. & N. Dec. 66, 69 (BIA 2025); *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025). As a result, individuals like Petitioner who entered the U.S. without inspection are now not eligible for bond absent a federal-court order in a habeas case.

16.     Respondents' position on their own detention authority contradicts decades of settled precedent, which holds that individuals who entered the U.S. without inspection are governed by 8 U.S.C. § 1226(a). Regulations promulgated nearly thirty years ago provide that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination" under Section 1226. 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). Until recently, Respondents consistently adhered to this interpretation. *See, e.g., Matter of Garcia- Garcia*, 25 I&N. Dec. 93 (BIA 2009); *Matter of D-J-*, 23 I&N. Dec. 572 (A.G.

2003); *see also* Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954) ([Solicitor General]: "DHS's long-standing interpretation has been that 1226(a) applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended.").

17.      Since this shift, "hundreds of district court decisions have rejected Respondents' expansive interpretation of Section 1225." *Molina v. DelLeon,* No. 25-CV-06526 (JMA), 2025 WL 3718728, at *3 (E.D.N.Y. Dec. 23, 2025) (collecting cases); *Rodriguez v. Bostock*, No. 3:25-CV-05240- TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.").

In November, a district court in California also held in a series of decisions that DHS's position on bond eligibility is unlawful with respect to "all noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS- BFM, --- F. Supp. 3d      , 2025 WL 3288403, at *1 (C.D. Cal. Nov. 25, 2025); *see also Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987, at *1, *32 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873- SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). That judgement should be binding on Respondents nationwide, but instead Respondents have directed immigration judges to ignore the decision. On February 18, the court granted plaintiffs' motion

6

to enforce the judgment and excoriated the government for "far cross[ing] the boundaries of constitutional conduct." *Lazaro Maldonado Bautista et al. v. Ernesto Santacruz Jr et al.*, 5:25-cv-01873-SSS-BFM at *10 (C.D. Cal. February 18, 2026).

### B.    Non-Citizens Possess Due Process Rights

18.    The Due Process Clause of the Fifth Amendment entitles noncitizens to due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993).  As clearly enunciated by the Supreme Court, the protection of the Due Process Clause applies to noncitizens in the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).

19.    Stated simply, "while [DHS] might want to enforce this country's immigration laws efficiently, it cannot do that at the expense of fairness and due process." *Ceesay v. Kurzdorfer*, No. 25-cv-267, 2025 WL 1284720, at *1 (W.D.N.Y. May 2, 2025) (citing *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954)).

20.    Further, noncitizens are entitled to procedural due process protections, even in the face of policy shifts between administrations.  While a "new administration can change the rules . . . it cannot change them and make up new rules as it goes along when the new rules abridge constitutional rights." *Velasquez v. Kurzdorfer*, No. 25-cv-493, 2025 WL 1953796, at *14 (W.D.N.Y. Jul. 16, 2025).

21.    Respondents' actions in detaining individuals like Petitioner without an individualized custody determination violate the right to due process. A person's liberty cannot be infringed upon without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690-91. The Second Circuit has held that the *Matthews v. Eldridge* balancing test is applicable to determine the adequacy of process in the context of civil immigration confinement. *Velasco Lopez*, 978 F.3d at

7

851 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). This test requires process sufficient to mitigate the risk of erroneous deprivation of a liberty interest.

22.     Numerous courts in this district and others across the country have held that these detentions violate not only the Immigration and Nationality Act but also the due-process clause. *See Padilla Molina v. Deleon*, No. 25-CV-06526, 2025 WL 3718728, at *5 (E.D.N.Y. Dec. 23, 2025); *Hyppolite v. Noem*, No. 25-cv-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); *Artiga v. Genalo*, No. 25-cv-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); J.*U. v. Maldonado*, No. 25-cv-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *Guerrero v. Noem*, No. 25-cv-5881, 2025 WL 3214787 (E.D.N.Y. Nov. 18, 2025)); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, (S.D.N.Y. August 13, 2025); *Cuy Comes v. DeLeon*, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at *5 (S.D.N.Y. Nov. 14, 2025); *Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737 at *4 (S.D.N.Y. June 18, 2025).

**C.    Ms. Henao's Statutory and Constitutional Procedural Due Process Rights Require an Individualized Determination Prior to Detention**

23.     Because Ms. Henao possesses Constitutional due process rights, as well as procedural rights conferred by § 1226(a) and its implementing regulations—her status as a non-citizen is irrelevant in that regard—a decision to detain a her requires an individualized determination addressing whether she poses a risk of flight, or a danger to the community.  *See Velesaca v. Decker*, No. 20-cv-1803, 458 F. Supp. 3d 224, 235 (S.D.N.Y. 2020); *Lopez Benitez*, 2025 WL 2371588, at *10; *Kelly v. Almodovar*, No. 25-cv-6448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025).

24.     Under the *Mathews* rubric, freedom from imprisonment, physical restraint, or other forms of government custody is "the most elemental of liberty interests."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Lopez Benitez*, 2025 WL 2371588, at *9 ("[Petitioner] invokes the

most significant liberty interest there is—the interest in being free from imprisonment")

(quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)) (citing *Hamdi*, 542 U.S. at

529); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. Nov. 22, 2019) (noncitizens in

immigration custody had an arguably even greater liberty interest in remaining out of detention

than criminal parolees who required due process protection).

26.    With respect to the second *Mathews* factor, given the strong liberty interest at stake, the

Fifth Amendment's guarantee of due process requires at least some notice and an opportunity to

be heard before a person can be placed in immigration detention. *Trump v. J.G.G.*, 604 U.S.

670, 673 (2025).  Further, due process requires that "notice must be afforded within a

reasonable time and in such manner as will allow [noncitizens] to actually seek . . . relief[.]" *Id.*

26.    For the third *Mathews* factor, "the Attorney General's discretion to detain individuals

under 8 U.S.C. § 1226(a) is valid where it advances a legitimate government purpose." *Velasco

Lopez*, 978 F.3d at 854.  The recognized government interests in immigration detention are

"ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing

danger to the community." *Zadvydas*, 533 U.S. at 690.  Absent evidence in the record that a

noncitizen is dangerous—and here there is none—when the noncitizen has appeared for

immigration proceedings, district courts have held that the government cannot demonstrate a

significant interest in their detention. *See Lopez Benitez*, 2025 WL 2371588, at *13; *Valdez*,

No. 25-cv-4627, 2025 WL 1707737, at *4 (S.D.N.Y. Jun. 18, 2025).

27.    Recent decisions by federal courts throughout the country confirm that due process

requires the government to make individualized determinations to detain noncitizens, and give

them notice and a meaningful opportunity to be heard when challenging their detention.

Further, if a noncitizen does not receive individualized consideration pre-deprivation, his due

process rights are irrevocably violated, and no amount of procedure provided post-detention can remedy that violation. *See, e.g., Lopez Benitez*, 2025 WL 2371588, at *14 ("Given the nature of the constitutional violation Mr. Lopez Benitez sustained here—*i.e.*, Respondents' failure to conduct any kind of individualized assessment before detaining him—any post-deprivation review by an immigration judge would be inadequate."); *see also Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (finding bond "hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.") (citation modified); *Kelly*, 2025 WL 2381591, at *3 (same).

28.     As a result, courts throughout the country, and in this district, have ordered a noncitizen's immediate release where their pre-detention due process rights have been violated. *See, e.g., Osorio v.* Francis, 26-cv-1074 (VJC)m ECF Doc. 9 (E.D.N.Y. Feb. 26, 2026); Contreras *Maldonado*, 2025 WL 2985256, at *7; *Rivera Zumba*, 2025 WL 2753496, at *11; *Lopez Benitez*, 2025 WL 2371588, at *15; *Lomeu*, 2025 WL 2981296, at *9; *Soto*, 2025 WL 2976572, at *9; *see also Maklad v. Murray*, No. 1:25-CV-946, 2025 WL 2299376, at *10 (E.D. Cal. Aug 8, 2025); *Pinchi*, 2025 WL 2084921, at *7; *Velasquez*, 2025 WL 1953796, at *18; *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679, at *10 (E.D. Cal. July 11, 2025); *Kelly*, 2025 WL 2381591, at *8; *Rosado*, 2025 WL 2337099, at *19; Valdez, 2025 WL 1707737, at *5.

29.     Here, immediate release is appropriate because Respondents have not—and cannot— show that they conducted an individualized determination regarding Ms. Henao before her summary arrest. *Cuy Comes v. DeLeon*, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at *6 (S.D.N.Y. Nov. 14, 2025) (ordering immediate release where petitioner's first encounter with

ICE was a detention without an individualized determination); *Perez Velasquez v. Noem*, No. 25 CIV. 10338 (AT), 2025 WL 3707526, at *4 (S.D.N.Y. Dec. 22, 2025) (same); *Campos v. Deleon*, No. 25-CV-10099 (LJL), 2025 WL 3514120, at *2 (S.D.N.Y. Dec. 8, 2025) (collecting cases).

30.     Nor is Ms. Henao a flight risk or a danger to the community.  She has lived in the United States since 2019; her son also lives in the United States; and she works as a vendor. There is no indication that she has had contact with law enforcement, beyond the instant immigration proceeding.  Nothing in her conduct or profile apparently changed to precipitate her detention yesterday. There is simply no individualized justification available for her remaining in custody now.  Her release is thus required under the U.S. Constitution.  *See Cuy Comes v. DeLeon*, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at *6 (S.D.N.Y. Nov. 14, 2025) (ordering immediate release where petitioner's first encounter with ICE was a detention without an individualized determination); *Perez Velasquez v. Noem*, No. 25 CIV. 10338 (AT), 2025 WL 3707526, at *4 (S.D.N.Y. Dec. 22, 2025) (same); *Campos v. Deleon*, No. 25-CV-10099 (LJL), 2025 WL 3514120, at *2 (S.D.N.Y. Dec. 8, 2025) (collecting cases).

**D.     The Fourth Amendment Precludes Warrantless Arrests Without Reasonable Suspicion**

31.     Finally, ICE officers' authority to conduct warrantless arrests is prescribed in 8 U.S.C. 1357(a)(2). That statute requires that officers have "reason to believe" a person is in the U.S. in violation of laws and "is likely to escape before a warrant can be obtained for his arrest." That assessment must be individualized. In order to comport with the Fourth Amendment, this is tantamount to a probable-cause standard.  *See Polanco v. United States*, No. 10 CV 1705 SJ RLM, 2014 WL 795659, at *4 (E.D.N.Y. Feb. 27, 2014) ("In the immigration context, in order to arrest a suspect, an officer is required to have 'reason to believe' that the suspect is an alien

unlawfully in the United States.  Reason to believe has been defined as requiring probable cause." (quoting 8 U.S.C. § 1357(a) (2); 8 C.F.R. § 287.8(c)(2)(i)) (citing *Avila–Gallegos v. INS,* 525 F.2d 666, 667 (2d Ci r.1975)).

32.     There is no indication that officers obtained a warrant or had any other legitimate, and articulable legal basis to arrest Ms. Henao.  Nothing in the Notice to Appear with which she was served indicate that officers sought her out, or had an articulable reason to believe that her presence in the United States violated the law, or that she was likely to flee if officers took the brief time necessary to obtain a judicial warrant.  Ms. Henao's arrest is thus a strident Fourth Amendment violation as well.

## CLAIMS FOR RELIEF

### COUNT ONE
### ICE'S FAILURE TO EXERCISE ITS DISCRETION VIOLATES PROCEDURAL AND SUBSTANTIVE DUE PROCESS, U.S. CONST. AMEND. V

33.     Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

34.     Petitioner's detention violates both the substantive and procedural components of the Due Process Clause. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. *See generally Reno v. Flores*, 507 U.S. 292 (1993); *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Kim*, 538 U.S. 510 (2003).

35.     Because "[i]n this country liberty is the norm and detention 'is the carefully limited exception,'" *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (*quoting United States v. Salerno*, 481 U.S. 739, 755 (1987)), a reasoned, individualized determination is essential to ensure that detention is not an unnecessary—and thus erroneous—deprivation. Petitioner's

mandatory detention, following a summary apprehension that failed to consider her individualized circumstances, violates her right to due process.

36.    Petitioner was not accorded sufficient process prior to her sudden detention by ICE. On information and belief, she received neither notice nor an opportunity to be heard as to whether detention was warranted. *See Padilla Molina*, 2025 WL 3718728, at *5; *Hyppolite*, 2025 WL 2829511, at *13; *see also Cuy Comes*, 2025 WL 3206491, at *5 (ordering immediate release where "ICE summarily detained Cuy Comes without making an individualized determination as to his risk of flight or his danger to the community, let alone affording him notice or opportunity to be heard").

37.    Petitioner's detention also violates her right to substantive due process. Because she poses no danger to the community, and is not a flight risk, her detention serves no lawful purpose.

38.     For these reasons, Respondents' actions violate Petitioner's right to due process.

## COUNT TWO

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

39.    Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

40.    The Administrative Procedure Act prohibits agency action which is arbitrary and capricious; contrary to constitutional right; not authorized by statute; or taken "without observance of procedure required by law." 5 U.S.C. § 706(2).

41.    An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the

evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (*quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

42.     Respondents' current construction of its detention authority, including the treatment of Petitioner as subject to mandatory detention, violates the Immigration and Nationality Act and therefore the Administrative Procedure Act.

## COUNT THREE
### VIOLATION OF THE FOURTH AMENDMENT
### AND 8 U.S.C. § 1357

43.     Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

44.     "The Fourth Amendment applies to all seizures of the person." *United States v. Brignoni- Ponce*, 422 U.S. 873, 878 (1975). Except at the border and its functional equivalents, the Fourth Amendment prohibits Respondents from conducting a detentive stop to question a person without reasonable suspicion that a person is a noncitizen unlawfully in the United States. *Id.* at 884. The Government bears the burden of providing "specific and articulable facts" to support reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). The race of an individual cannot itself create reasonable suspicion, even for a temporary stop. *United States v. Brignoni-Ponce*, 422 U.S. 873, 887 (1975); *Noem v. Vasquez Perdomo*, No. 25A169, --- S.Ct , 2025 WL 2585637, at *3 (Sep. 8, 2025) (Kavanaugh, J., concurring). Officers lacked reasonable suspicion to perform a detentive stop of Petitioner.

45.      A search or seizure requires probable cause to believe a noncitizen "is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357 (a)(2). "Though 8 U.S.C. § 1357(a)(2) uses the phrase 'reason to believe; as the standard for executing warrantless civil immigration arrests, 'aliens in this country are sheltered by the Fourth Amendment in common with citizens,' and therefore, to avoid running afoul of the Fourth Amendment, this statutory phrase is 'considered the equivalent of probable cause.'" *Escobar Molina*, 2025 WL 3465518, at *13 (quoting *Au Yi Lau v. U.S. Immigr. & Naturalization Serv.*, 445 F.2d 217, 222-23 (D.C. Cir. 1971)); *see also United States v. Rodriguez*, 532 F.2d 834, 838 (2d Cir. 1976) (recognizing that arrests under 8 U.S.C. § 1357(a)(2) require probable cause); *English v. Sava*, 571 F. Supp. 1029, 1034 (S.D.N.Y. 1983) (construing 8 U.S.C. § 1357(a)(2) to require probable cause). Officers lacked probable cause to seize Petitioner.

46.      Respondents' actions violated Petitioner's rights under the Fourth Amendment and 8 U.S.C. § 1357.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully requests that this Court:

1.      Assume jurisdiction over this matter;

2.      Enjoin Petitioner's removal from the United States and transfer from the Eastern District of New York, pending adjudication of the instant petition;

3.      Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

4.      Declare that Petitioner's detention violates the Due Process Clause of the Fifth

Amendment and the Administrative Procedure Act;

5.       Grant a writ of habeas corpus ordering Respondents to immediately release

Petitioner without GPS monitoring;

6.       Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice

Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

7.       Grant such further relief as this Court deems just and proper.

Dated: February 28, 2026

*Roland G. Riopelle*

Attorney for the Petitioner
Beatriz Yolanda Garcia Henao
950 Third Avenue, 31st Floor
New York, NY  10022
(212) 586-4900, x118
rriopelle@sercarzandriopelle.com